## GRADY v. GREAT SOUTHERN TRUCKING CO., et al.

Industrial Commission.

June 27, 1955.

Donald K. Carroll and John E. Mathews, Jr., both of Jacksonville, for claimants.

Marks, Gray, Yates & Conroy, Jacksonville, for the employer and insurance carrier.

Chairman JAMES T. VOCELLE, commissioners WALTER L. LIGHTSEY and JAMES CAMERON participated in the disposition of this application for review.

BY THE COMMISSION.

The carrier by this review seeks reversal of an award by deputy commissioner B. T. Miller granting dependency benefits to Rosemary and Helen Teresa Grady, widow and minor child of Thomas B. Grady, deceased, as employee of Great Southern Trucking Co.

The pertinent facts are briefly summarized as follows—Grady, executive vice president of Great Southern, was, in behalf of his company, attending an important conference of a national trucking committee at the Conrad Hilton Hotel in Chicago on March 9, 1954. He attended committee meetings and a luncheon during the day of March 9, 1954 and made arrangements for a dinner meeting that evening to continue the discussions of the trucking committee problems with certain other persons attending this conference. At about 5:30 P.M., or shortly thereafter, he left his associates in the lobby of the hotel to go to his room for the purpose of preparing to go out that evening to the pre-arranged dinner meeting. While in the shower he must have slipped and fallen and in falling hit the hot water faucet, for he was discovered sometime later, by a hotel employee who answered a call to his room, in a very seriously burned condition. Grady was moved to a hospital in Chicago, later to Jacksonville and thereafter died as a result of the burns suffered on March 9, 1954 as above described.

The question presented by the carrier on this review, as well as below before the deputy, is—Did the accident in question arise out of and in the course of the employment? The deputy, after ex-

tended review and recitation of the evidence in her award, held that this accident did arise out of and in the course of deceased's employment.

The carrier in its brief admits that Grady was active in promoting the interests of his company, was a member of the "Committee of 100" meeting in Chicago whose activities were associated with the progress of the employer; that the purpose of this trip was primarily to attend this committee meeting; and that he was paid for this trip. The carrier contends, however, that the incident of bathing and the plan of activities for the evening were purely personal in nature and not covered as risks of or incident to employment. The question then is two-fold, namely, did the accident occur during the course of the employment—meaning time and place; and, also did it arise out of the employment — meaning activity which involved a risk incident to such employment.

First, as to time and place, the cases generally hold, and this commission is committed to the doctrine, that traveling employees are entitled to compensation protection when the injury has its origin in a risk created by the necessity of sleeping or eating away from home. We recently so held in Gambill v. Marine Rodia, claim #S-116686, where the employee was injured while going out to a restaurant or drive-in for lunch and was run over by a car at that site. Hence, under the same rule, the employee here was in the course of his employment in so far as time and place are concerned, unless at the time of the accident his activity constituted a deviation.

The specific activity—bathing—at the time of the injury poses a more serious problem in so far as risk of or incident to the employment is concerned. The authorities are in hopeless disagreement on this point and offer but little constructive assistance. For example: traveling men who lost their life as a result of fire or asphyxiation in a hotel room have been held covered, Souza's Case (Mass.), 55 N.E. 2d 611, and California Casualty v. Industrial Accident Commission (Cal.), 53 Pac. 2d 758; as have unexplained falls in a street or hotel, being struck by an automobile and many other types of accidents incident to eating or sleeping. The cases covering toilet and bathing while traveling do not follow any set pattern. In New York a traveling salesman was held not covered when he slipped and fell in the bathtub, Davidson v. Pansy Waist Co. (N.Y.), 148 N.E. 715; however, another such salesman was held covered when he got a hairbrush bristle in his eye when a train jolted, Leif v. Walzer & Son (N.Y.), 4 N.E. 2d 727. The same court applies a different rule to domestic servants and traveling

actors, without any logical distinction. The Wisconsin court in denying compensation to a traveling man who slipped in a shower while in a tourist camp stated simply that "sleeping and making toilet are not a part of traveling but of living," Gibbs Steel Co. v. Industrial Commission (Wis.), 10 N.W. 2d 130. However, it is difficult to see how they can logically distinguish the bunkhouse or hotel fire cases from the bathing or eating cases involving traveling employees. Since these cases offer no real or controlling criteria or rule to govern coverage or risk application in the present type of situation it is deemed appropriate to return and examine anew the basic risk concept of the phrase "arising out of the employment" as it applies to all unexplained falls which occur during the employment period.

Just what do these words mean? Too often, we fear, the courts and even the commissions are prone to treat this phrase as though it were (1) "proximately caused by the employment," or (2) "legally caused by the employment." "Arise," however, means commence, originate, happen or occur. "Arise" does have something to do with causal connection but there are many shades of meaning to causal connection. It is our feeling that the "arising" phrase of the function of the employment is *passive* while "caused by" or "proximately caused" are or should be active. The employment is a *condition* out of which the event arises rather than the force producing the event in an affirmative fashion. Physical causation by the surroundings is not required in order to satisfy what is implied by this phrase of the Act. It is sufficient if the general conditions under which the employee is working at the time admit of the accident or event being occasioned by the movement of the employee, and such conditions, surroundings and circumstances may be passive, active or inert.

With the above observations in mind let's reexamine this case. Grady was in Chicago on business of his employer; he attended committee meetings; he made arrangements to continue a discussion of committee business at a later dinner meeting; he went to his room to, among other things, prepare himself to attend this meeting; and proceeded to take a bath or shower; the accident arose out of this bath or shower. To us these events meet the test of causation necessary under our Act unless the defense shows a definite departure for a personal mission. The deputy did not on the facts presented find any such departure and we believe rightly so.

Our court in Neuman v. Shelbourne Grand Hotel, 20 So. 2d 677, held a similar type case compensable. There a hotel hostess living

in the hotel and on continuing duty slipped in the bathtub while endeavoring to answer a telephone call. The accident "arose out of and in the course of the employment." The deputy, the commission and a circuit court denied the claim but the Supreme Court reversed on the basis of claimant's testimony that she was endeavoring to answer the telephone when she slipped. It is, however, important to note that the court inferred that bathing and neat grooming alone would have been sufficient for coverage had the deputy so found or deduced from the facts there present. Hence in our opinion the Florida Court is committed to the broader, more liberal view of causation as hereinabove stated.

One other point should be covered in conclusion. The carrier stoutly contends that there is no evidence to establish the fact that Grady had made arrangements for a dinner meeting on March 9, 1954 to discuss committee business or affairs. With this contention we cannot agree. The witness, Lee Hyde, was clear and positive on this point and his testimony is uncontradicted. There is ample, competent, substantial evidence to support all findings of the deputy commissioner and her award is in all respects affirmed. It is further ordered that the carrier pay to claimant's attorneys $300 for services rendered before this commission on review.